[Civ. No. 1292.   Fourth Appellate District.—August 1, 1934.]

W. EARL HILL, Respondent, v. COUNTY OF FRESNO (a Body Politic and Corporate) et al., Appellants.

Glenn M. Devore, District Attorney, Ray W. Hays and David E. Peckinpah for Appellants.

Theodore M. Stuart for Respondent.

JENNINGS, J.—This is an appeal by the defendants from a judgment in favor of plaintiff entered in conformity with the verdict returned by a jury.

The essential facts which are disclosed by the record may be summarized as follows: At about 5 o'clock P. M. of the afternoon of August 18, 1931, the plaintiff was driving a touring type Dodge automobile in a northerly direction on Orange Avenue in the city of Fresno and was approaching the intersection of Orange Avenue with Butler Avenue. At the same time the defendant J. Fred Shedd was driving a touring type Lincoln automobile in a westerly direction

along Butler Avenue and was approaching the intersection of the above-mentioned streets. The two automobiles proceeded into the intersection and a collision occurred between them at a point which was slightly north of the center of the intersection. The evidence showed that the Lincoln automobile collided with the right rear part of the Dodge. As a result of the collision plaintiff suffered serious injuries which will hereinafter be described. Thereafter he instituted this action by filing a complaint in which he alleged that the collision and his consequent injuries were proximately caused by the negligent operation of the Lincoln automobile by the defendant Shedd, who was alleged to have been an employee of the defendant County of Fresno and who was also alleged to have been acting in the scope of his employment at the time of the collision. Each defendant filed a separate answer in which it was denied that Shedd was guilty of negligence which was the proximate cause of the collision. In addition each answer affirmatively alleged that the plaintiff himself was guilty of negligence which directly and proximately contributed to the happening of the collision. Upon the conclusion of the trial of the issues raised by the pleadings the matter was submitted to a jury which returned a verdict in plaintiff's favor against both defendants in the amount of $35,000.

The first contention advanced by appellants is that the judgment lacks evidentiary support for the reason that the evidence established that the plaintiff was himself guilty of contributory negligence as a matter of law. In advancing this contention it is conceded that evidence was produced at the trial from which the jury was warranted in finding that appellant Shedd was guilty of negligence. It is also conceded that the correct rule which is applicable to this contention is as declared in *Cummins* v. *Yellow & Checker Cab Co.,* 127 Cal. App. 170, 175 [15 Pac. (2d) 536], in the following language: "It is a question of law for the court only when the facts are undisputed, and only then where on those facts reasonable minds can draw but one conclusion."

Since the automobile operated by appellant Shedd approached the intersection from respondent's right side it is obvious that two factors are important on the issue of contributory negligence. These are the rate of speed at

which each automobile approached and traversed the intersection under the circumstances which the evidence showed existed at the time of the collision and the question of which automobile first entered the intersection. The respondent testified that when he had arrived at a point which was 30 feet south of the south line of the intersection he looked first to the west and saw no vehicle approaching the intersection from that direction; that he then looked to the east and saw the Lincoln automobile which was then about 200 feet to his right and approaching the intersection at a rate of speed between 35 and 40 miles per hour as he came up to the intersection; and, after he had looked in both directions, he increased his speed slightly and proceeded into the intersection; that he did not again look either to the east or west as he traversed the intersection; that he did not remember being struck since he was rendered unconscious by the force of the collision. Appellant Shedd testified positively that he approached the intersection at a speed of 25 to 30 miles per hour and that he entered the intersection in advance of respondent.

In urging that this court must declare that respondent was guilty of contributory negligence as a matter of law, it is said that the only positive evidence which was produced on the question of who first entered the intersection was the testimony of Shedd as above noted. From this it is said to follow that respondent was guilty of negligence in failing to yield the right of way to Shedd and that this failure constituted negligence which contributed to the happening of the collision. It is further urged that respondent's failure to look again to the east and to make any further observation of Shedd's automobile which he estimated was approaching the intersection at a speed of approximately 35 to 40 miles per hour constituted negligence as a matter of law which contributed proximately to the happening of the collision.

With respect to the contention that the only direct evidence on the important question of which man first entered the intersection consisted of Shedd's positive testimony that immediately after he had crossed the east boundary of the intersection he observed that respondent's automobile was just then entering the intersection, it may be conceded that such is the case. Nevertheless, we think that the jury was entitled to consider respondent's testimony on this point.

From this testimony the jury may reasonably have inferred that respondent had entered the intersection before Shedd came into it. If respondent was correct in his statement that when he saw Shedd's automobile it was 200 feet to the east of the east boundary of the intersection and approaching it at a speed of approximately 35 to 40 miles per hour, at which time he was 30 feet south of the south boundary and was proceeding at a speed of about 15 miles per hour, it requires a very simple calculation to discover that respondent must have first entered the intersection. Appellants contend that respondent must have been mistaken in his estimate of the distance which intervened between the east boundary of the intersection and Shedd's automobile when respondent observed it since the evidence showed that respondent had to proceed only 60 feet to the point of collision whereas Shedd had to proceed approximately 229 feet to the same point. It is then pointed out that if respondent was proceeding at a rate of 15 miles per hour and Shedd at a rate of 40 miles per hour respondent must have passed the point of collision in safety or Shedd must have been driving in excess of 50 miles per hour. It may well be that respondent was mistaken as to the distance which intervened between the east boundary of the intersection and Shedd's automobile. It is also possible that he misjudged the speed at which Shedd was moving and that instead of 40 miles per hour Shedd may have been proceeding at a much faster rate. At all events, the jury was entitled to consider respondent's testimony together with all other evidence submitted. We think that we are not called upon to indulge in a mathematical calculation in which certain factors must be assumed to be definitely determined in order that we may declare that respondent's testimony was so inherently improbable that the jury was not justified in giving any consideration to it (*Fugelsang* v. *Steiner*, 115 Cal. App. 167, 173 [1 Pac. (2d) 553]). Finally, the undisputed fact that Shedd's automobile collided with the rear part of respondent's automobile was evidence which of itself indicated that respondent's automobile entered the intersection in advance of that of Shedd.

We also entertain the conviction that we are not called upon to declare that respondent was guilty of negligence as a matter of law because he testified that he looked

to the east only once prior to entering the intersection and having observed Shedd's automobile approaching the intersection from that direction at a rate of speed between 35 and 40 miles per hour proceeded into the intersection without again looking to the east. The contention of appellants in this regard is based solely on respondent's testimony. Since, therefore, it is founded on the hypothesis that respondent's testimony was true and correct we must assume that it was correct in every particular which manifestly includes the correctness of respondent's estimate that Shedd's automobile was 200 feet distant from the east boundary of the intersection at the time he observed it and that it was being operated at a speed which did not exceed 40 miles per hour. If respondent's estimate as to distance and speed were correct respondent was entitled to assume that the speed of Shedd's automobile would not be increased to such an extent that it would bring the Shedd automobile into collision with his own automobile and that he could therefore proceed into and through the intersection without giving further attention to Shedd's automobile (*Fugelsang* v. *Steiner, supra*). We must therefore resolve the contention that the evidence showed that respondent was guilty of negligence as a matter of law adversely to appellants.

It is contended by appellants that the trial court committed reversible error in excluding evidence relating to the conditions which existed at the southwest corner of the intersection in which the collision occurred. Examination of the record discloses that the question of whether or not the intersection was an obstructed or blind intersection had an important bearing on the issue of the alleged contributory negligence of respondent. It is pointed out that the trial court permitted a full showing of the conditions which existed at the southeast corner of the intersection but it is charged that the court did not permit such showing as to conditions which existed at the southwest corner. Appellant County of Fresno particularly complains of the court's ruling. The ground of complaint is that the language of subdivision b–2 of section 113 of the California Vehicle Act provides as follows:

"Fifteen miles an hour in traversing an intersection of highways when the driver's view is obstructed. A driver's

view shall be deemed to be obstructed when at any time during the last one hundred feet of his approach to such intersection he does not have a clear and uninterrupted view of such intersection and of the traffic upon all of the highways entering such intersection for a distance of two hundred feet from such intersection.''

In accordance with this language it is said that it was just as important to show the conditions which existed at the southwest corner of the intersection as to show those that existed at the southeast corner, since if the view of the respondent was obstructed either to the east or to the west at any point during the last 100 feet of his approach to the intersection the rate of speed at which he was legally permitted to cross the intersection was limited to 15 miles per hour. It is then pointed out that evidence was produced by appellants which would have justified the jury in finding that respondent traversed the intersection at a speed of 30 miles per hour. The final step in this argument is that, since there was evidence from which the jury might have concluded that respondent exceeded the speed limit permitted in an intersection where the view of approaching drivers was obstructed, therefore the fact finding body might have found that respondent was guilty of contributory negligence if the trial court had not made the ruling of which complaint is here presented.

The contention is entirely lacking in merit. Examination of the record shows that the ruling occurred during the cross-examination of a witness called by respondent. This witness was permitted to testify fully as to the conditions that existed at the southwest corner of the intersection. He stated that at the southwest corner there was an apartment house which was located not more than 50 or 55 feet south of Butler Avenue and that it stood 15 or 20 feet from the west curb of Orange Avenue. He further testified that there was a pole between the apartment house and the corner of the intersection. At this point and when no question was pending an objection was interposed on the ground that the southwest corner of the intersection was not involved in the case and that any inquiry regarding the southwest corner was immaterial. The objection was sustained. Notwithstanding the court's ruling in sustaining the objection when no question was pending the record shows that the

witness was permitted to testify further with respect to conditions which existed at the southwest corner and that he gave the location of a store which evidently stood on the south side of Butler Avenue west of the intersection. It is significant that no motion to strike the testimony of the witness was made and that no further showing with respect to the condition that existed at the southwest corner was attempted by either appellant. We cannot assume that the court would have incorrectly sustained an objection to proper evidence if such had been offered. The court's ruling in sustaining an objection when no question was pending wrought no damage to appellants. The evidence respecting the southwest corner remained for the jury's consideration. No further evidence which tended to show that respondent's view to the west was obstructed at any point during the last 100 feet of his approach to the intersection was submitted. Under the circumstances the court's ruling was not prejudicial to appellants and was entirely harmless.

Appellant County of Fresno further contends that the trial court improperly and incorrectly advised the jury in various specified instructions.

It is contended that the court incorrectly advised the jury that this appellant had admitted in its answer that its co-defendant was acting in the scope of his employment at the time of the collision. The record shows that the first paragraph of respondent's complaint alleged as follows: "That the defendant, J. Fred Shedd, is and was during all of the times alleged in this complaint an employee of the said County of Fresno, employed in said work of maintaining and repairing the said public roads, and was engaged in said work." Paragraph III of the complaint alleged that Shedd, on August 18, 1931, in the performance of his work as a county employee and while engaged in doing said work and while acting within the scope of his employment was driving an automobile westerly on Butler Avenue. Paragraph IV of the complaint alleged that on the above-mentioned date and at the intersection of Butler and Orange Avenues, J. Fred Shedd, "in said performance of his said work for the defendant, County of Fresno", so negligently, etc., operated his automobile that he caused the same to collide with respondent's automobile. The answer of appellant County of Fresno contained no denial of the allegations

of paragraph I of the complaint. With respect to the allegations of paragraph III this appellant alleged that it had no information or belief as to the matters therein alleged and for that reason denied generally and specifically each and every allegation therein contained. The answer contained a general denial of each and every allegation contained in paragraph IV of the complaint. Upon this state of the pleadings the court ruled that the legal effect of the failure of the County of Fresno to deny the allegations of paragraph I of the complaint was an admission that the appellant "Shedd was in the course and scope of his employment at the time of the alleged accident". The court also instructed the jury that "since it is admitted by both defendants that the said J. Fred Shedd was engaged in his work for the County of Fresno at all of the times alleged in the complaint, it is an admitted fact in this case that the said J. Fred Shedd was then and there representing the County of Fresno in the performance of his said work, and if under these instructions and under the evidence you should find that the plaintiff is entitled to a verdict against the said J. Fred Shedd, you must also find that the plaintiff is entitled to a verdict against the County of Fresno".

It may be conceded that it is open to doubt whether or not the court's ruling and instruction which had the effect of relieving respondent from the burden of establishing that at the time of the collision appellant Shedd was acting in the scope of his employment was correct. Nevertheless, a review of the record impels the conviction that, assuming that the ruling and instruction were incorrect, no prejudice resulted to appellant County of Fresno therefrom. The only evidence which was produced during the trial which had a direct bearing on the question of whether or not appellant Shedd was acting in the scope of his employment when the collision occurred consisted of the testimony of Shedd, who stated that at the time of the accident he was on his way home, but that he intended to stop at the courthouse for the purpose of consulting with one of the county supervisors of Fresno County with respect to several matters about which the witness desired information. This evidence also showed that the day on which the collision occurred was the day of the week which had been designated by the supervisors for the appearance of this witness at the offices of two

supervisors to transact any business that might be required or to secure any information relative to the work in which the witness was engaged. The County of Fresno, admitted employer of Shedd, produced no evidence which contradicted or questioned the above-mentioned evidence. The situation is therefore one which amply justifies the application of section 4½ of article VI of the Constitution of California since it is manifest that the claimed error was not prejudicial to the appellant complaining of it and that no miscarriage of justice resulted therefrom.

Appellant County of Fresno contends that the trial court erroneously instructed the jury with reference to the issue of contributory negligence. The particular instruction which is attacked as containing an incorrect statement of law is as follows:

" . . . Therefore in considering the evidence, the first two issues that you shall determine under said evidence are as follows:

"1. Was the defendant Shedd guilty of negligence which proximately caused said collision and the resultant injury and damages, if any, to the plaintiff?

"2. *Was the plaintiff guilty of any negligence which proximately and directly contributed to or was a proximate cause of the said collision and the injuries and damage, if any, to plaintiff?*" (Italics ours.)

The record shows that three instructions bearing on the question of contributory negligence were given. In addition to the above-quoted instruction which was given at respondent's request, the court gave two other instructions at the request of appellants. One of these latter instructions was in the following language:

"You are instructed that the law does not concern itself with the relative degree of negligence of the plaintiff and the defendants. Thus, if you find that the defendants were negligent and that their negligence proximately caused the injury of which the plaintiff complains, and you further find that the plaintiff himself was negligent, and that his negligence proximately contributed to the injuries of which he complains, you are not to concern yourself with the question as to whether the plaintiff's contributory negligence was equal to or greater than or less than that of the defendant's negligence. Contributory negligence if proven

is a bar to the plaintiff's recovery, regardless of its relative degree."

The second of such instructions was as follows:

"You are instructed that if the plaintiff, W. Earl Hill, was guilty of negligence which proximately caused or contributed to the collision, he is not entitled to recover any damages. Therefore, if you shall find that the plaintiff W. Earl Hill was guilty of negligence which proximately caused or contributed to the collision, he is not entitled to recover."

The complaining appellant argues that the two instructions which were given at the request of appellants correctly advised the jury that respondent's asserted negligence would bar recovery if it proximately contributed to the occurrence of the collision. It is urged that the instruction which was given at respondent's request imposed an unwarranted burden on appellants in that it advised the jury that respondent's negligence must be found to have "directly" contributed to the collision before the jury would be justified in finding in favor of appellants on the issue of contributory negligence.

We think that it must be conceded that the instruction was erroneous. We are not, however, convinced that the error was so prejudicial to appellants or to either of them as to demand a reversal of the judgment. In the first place, the language which is challenged as an incorrect definition of contributory negligence occurs in an instruction which purported to inform the jury generally as to the two issues which were submitted for their determination. In the two instructions which were given at the request of appellants, the jury was properly and more definitely advised that if it should find that respondent was guilty of negligence which proximately caused or contributed to the collision he was not entitled to recover. It is manifestly improper for a reviewing court to select one particular instruction and to consider it separately from the entire body of instructions of which it forms merely a part. Especially is this true when it is apparent that the criticised instruction purports to describe in general terms the issues which are submitted for the jury's determination. Evidently if the criticised instruction had omitted the words "and directly" appellant would have had no cause for complaint since its meaning

would then have been practically identical with the final sentence of the second of the above-quoted instructions given at the request of appellants. Under the circumstances disclosed by the record we feel that we cannot declare that the jury was misled by the criticised language to the prejudice of appellant. Particularly is this true since a review of the entire record entirely fails to produce a conviction that the giving of the instruction resulted in a miscarriage of justice.

Further complaint is voiced by appellant County of Fresno that the trial court erred in submitting to the jury the question of whether or not the collision occurred in a residential district. In the instruction which presented this matter for consideration the jury was advised that the California Vehicle Act provides that the driver of a motor vehicle may operate the same at a speed not exceeding 25 miles per hour in a residence district. In the same instruction the court defined the term "Residence district" in the language of the aforementioned statute. It is conceded by appellant that the evidence was sufficient to support a finding that the required number of dwelling houses and business structures specified in the act were located on one side of the highway within the required distance. It is, however, urged that this was not sufficient to justify the court in submitting the question to the jury as it is urged that it was incumbent on respondent to establish the additional fact that the district was sign-posted as a residence district as required by section 116 of the California Vehicle Act. In the absence of a showing that the district was sign-posted it is said that the highway along which appellant Shedd was driving as he approached the intersection was conclusively presumed to be outside a residence district. In support of its contention that the submission of the question was prejudicially erroneous, appellant urges that if the instruction respecting the speed permitted in a residence district had been omitted the jury might well have concluded that a speed in excess of 25 miles per hour was permissible to appellant Shedd in approaching the intersection whereas the giving of the instruction may have caused the jury to conclude that such speed was unlawful. It is pointed out that this question had an important bearing on the question of the alleged negligence of Shedd since the respondent testified

that Shedd was approaching the intersection at a rate of speed between 35 and 40 miles per hour.

It may be conceded that since the respondent requested the giving of the instruction which submitted the question to the jury he should have produced evidence to show that the district was sign-posted as a residence district. It may therefore be assumed that the submission of the question was erroneous under the circumstances. It does not, however, follow that the submission of the question was prejudicially erroneous. The appellant complaining of the court's action in this regard has expressly conceded that the evidence was sufficient to support a finding that the appellant Shedd was negligent. Having this concession in mind, it is difficult to conceive how the court's action could have been prejudicial to appellant. Moreover, the record demonstrates that the court in another instruction properly advised the jury that the California Vehicle Act provides that any person driving a vehicle on the public highways shall drive the same at a careful and prudent speed not greater than is reasonable and proper and that no person shall drive any vehicle upon a public highway at such speed as to endanger the life, limb or property of any person. Evidence was submitted from which the jury may well have concluded that appellant Shedd approached the intersection and traversed it at a rate of speed which was not reasonable and proper under the circumstances. Furthermore, evidence was submitted from which the jury may have concluded that respondent was first in the intersection and that Shedd failed to yield the right of way to respondent and that such failure was the proximate cause of the collision without reference to the speed at which Shedd was traveling. Finally, it must be borne in mind that the respondent did produce evidence which was not contradicted which showed that for a distance of 930 feet along Butler Avenue adjacent to the intersection there were 19 business structures and residences. This was ample to indicate that the territory was in fact a residence district as this expression is defined in subdivision (b) of section 28½ of the California Vehicle Act. Under all the circumstances, we feel that we cannot declare that the submission of the question to the jury was so prejudicial to the complaining appellant that a miscarriage of justice resulted therefrom.

■ Appellant County of Fresno also objects that the trial court advised the jury to return a verdict against the county if it returned one against `appellant Shedd. This is declared erroneous because it is said that the evidence was such that the jury might properly have found for the County of Fresno, although it returned a verdict against Shedd. It is pointed out that certain evidence respecting admissions made by Shedd immediately after the collision to the effect that the sun was in his eyes and he could not see respondent's car until he was very near to it was admitted; but that such evidence was by the court expressly limited to the question of Shedd's negligence. It is then argued that the jury may have found that the collision occurred through Shedd's negligence in driving forward when his vision was thus impaired and that since the evidence regarding his admissions was expressly limited to the question of Shedd's negligence and his consequent liability it follows that there is no evidence which would tend in the slightest degree to fasten liability upon the appellant county on account of the negligence of its employee Shedd in driving into the intersection with his vision so completely impaired by the rays of the sun as his admission would indicate. The argument is ingenious, but not convincing. In the final analysis the problem resolves itself into two questions, viz: (1) Was Shedd, the admitted employee of the county, engaged in the scope of his employment at the time of the collision? And (2) Does the record contain any evidence which justifies the jury's verdict that Shedd was guilty of negligence which may fairly be said to have been the proximate cause of the collision and the consequent injuries sustained by respondent? We have heretofore expressed our opinion as to the first of the above-stated inquiries and have indicated that all evidence respecting the question of whether or not Shedd was following out his duties as a county employee which was produced during the trial shows that at the time of the collision Shedd was engaged in the scope of his employment. This question must therefore be answered in the affirmative. The second question must likewise receive an affirmative answer. The testimony of respondent was that as he approached the intersection from the south at a speed of 15 miles per hour and when he had arrived at a point 30 feet south of the south boundary of the intersection he looked

to the east and observed Shedd's automobile approaching from the east at a speed of approximately 35 to 40 miles per hour and that Shedd's automobile was then about 200 feet east of the east boundary of the intersection, that respondent then proceeded into the intersection at a speed of 15 miles per hour and had arrived at a point slightly north of the center of the intersection when the right rear part of his automobile was struck by Shedd's automobile. If the jury believed this testimony it must have concluded that respondent was first in the intersection and therefore had the right of way over Shedd, that respondent traversed the intersection at a rate of speed which was entirely reasonable under the circumstances, that on the other hand Shedd approached the intersection at a rate of speed which was not reasonable and entered the intersection after respondent had proceeded into it and failed to yield to respondent the right of way and that the consequent collision was therefore proximately caused by Shedd's breach of the duty which he owed to respondent to permit respondent to pass safely through the intersection. The jury may well have taken this view of the collision without giving any consideration whatever to the evidence that Shedd had admitted that his vision was seriously obstructed by the sun's rays. Application of the familiar rule which requires a reviewing court to affirm a judgment if the record contains any evidence sufficient to support it therefore impels us to reject the complaint of the appellant county that the instruction to which reference has here been made was fatally defective.

■ Appellant County of Fresno presents another ingenious argument in support of a contention that the trial court erroneously advised the jury with respect to the question of damages. In his complaint respondent demanded compensatory damages in a total amount of $51,500, which was divided into the following elements: (1) $20,000 for loss of earning capacity; (2) $1500 for medical and hospital charges, expenses incurred for nursing and kindred expenses; and (3) $30,000 for elements of damage including physical pain and suffering. In the various instructions which the trial court gave with respect to damages it advised the jury that if it should find for the respondent and discover that he was entitled to any amount by way of compensation it should award such total amount as would fairly

and justly compensate for all detriment, if any, which the evidence showed that he had suffered by reason of the injuries sustained by him, but that such total amount should not exceed the sum of $51,500. It appears, therefore, that the trial court did not instruct the jury that it might not award more than the amount demanded in the complaint for each of the various elements of damage specified. Appellant county objects that the failure so to do constitutes reversible error and urges that for all that appears the jury in returning a verdict in respondent's favor for $35,000 may have allowed an amount in excess of $20,000 for loss of earning capacity or an amount in excess of $30,000 for physical pain and suffering or an amount in excess of $1500˙ for the expenses incurred by respondent by way of hospital and medical charges, nursing and kindred expenses.

The answer to the contention thus advanced is that the record shows that appellant County of Fresno did not request the trial court to instruct the jury to segregate the various elements of damage specified in the complaint and to find separately as to each one of the three elements for which compensation was demanded. Appellant may not, therefore, justly complain of the court's failure in this regard (*Bloomberg* v. *Laventhal,* 179 Cal. 616, 620 [178 Pac. 496]). The situation is analogous to that which is presented when a trial court in an action for damages renders judgment upon findings which are uncertain because it does not appear therefrom what elements the court considered in ascertaining the amount of damages allowed. Application of the familiar rule that any uncertainty in the findings must be so construed as to uphold rather than to defeat a judgment compels affirmation of a judgment under such circumstances (*Murphy* v. *Stelling,* 8 Cal. App. 702, 705 [97 Pac. 672]).

The final complaint of appellant County of Fresno is that the award of damages to respondent in the amount of $35,000 is excessive. The only method by which this question may properly be determined consists in a comparison of the award with the evidence produced during the trial of the action (*Zibbell* v. *Southern Pac. Co.,* 160 Cal. 237 [116 Pac. 513]). The record shows that the undisputed evidence presented by respondent on the question of the injuries sustained by him as a result of the collision

and the effect of these injuries upon his physical and mental system established the following facts: At the time of the collision respondent was a man 27 years of age in perfect physical condition and capable of performing whatever duties were required of him. He had a life expectancy of 37.43 years. As a result of the collision he sustained numerous fractures of the skull. He was rendered unconscious by the force of the collision and by reason of the injuries he received and the entire right side of his body was completely paralyzed. He remained unconscious for a period of 6 or 7 days during which time it was impossible to determine whether he would live or die. He remained in the hospital to which he had been removed immediately following the collision for 17 days. He was then taken to his home where he was confined to his bed entirely helpless for a period of approximately 2½ months. After this he was able to sit in a wheel chair and for about three weeks this contrivance was used. At the expiration of a period of approximately 4 months after the happening of the collision he had recovered to such an extent that he could walk without assistance. This, however, was possible only by the use of great care. Some regeneration from the paralysis with which he had been afflicted took place. He recovered to some extent the use of the right side of his body, but this recovery was far from complete. Prior to the occurrence of the collision he was possessed of a pleasant disposition. After having suffered the above-described injuries he became moody, morose and melancholy. As a result of his injuries he was rendered completely and permanently disabled. The only matter with respect to the probable effect of the injuries suffered by respondent upon which the medical witnesses produced by respondent and the doctor who testified for appellant county disagreed was the question as to whether it might reasonably be expected that at some future time he would suffer epilepsy. Respondent's medical witnesses testified that the probability of the development of epilepsy in respondent and the attendant loss of reasoning with the possibility of complete imbecility was considerable. On the other hand, the physician who testified on behalf of the County of Fresno expressed the opinion that epilepsy would not develop. Even if it be assumed that the single medical witness who testified on behalf of the appel-

lant county is correct and that we may properly eliminate the development of epilepsy as a probable result of the injuries we entertain the opinion that we cannot declare that the compensation awarded by the verdict is so excessive that it indicates that it was made as a result of the influence of passion and prejudice upon the minds of the jurors. The bare recital of the uncontradicted facts of the injuries and of their effect upon the mental, moral and physical constitution of the individual is of itself sufficient to foreclose this court from arriving at such a conclusion. Further, it is to be remembered that the judge who presided over the trial and at first hand heard the testimony of medical witnesses respecting the man's injuries was given the opportunity to consider the question of excessiveness of the award on the motion for a new trial. It is significant that he chose not to disturb it and by his action in denying a new trial gave to it his approval. This fact, together with the facts developed by the evidence produced during the trial of the action, impels the conclusion that we are not warranted in disturbing the award.

The judgment is therefore affirmed.

Barnard, P. J., and Marks, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 31, 1934, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 27, 1934.