[Civ. No. 11943. Second Appellate District, Division One.—July 12, 1940.]

HOWARD C. MURPHY, Respondent, v. DEPARTMENT OF WATER AND POWER OF THE CITY OF LOS LOS ANGELES et al., Appellants.

Ray L. Chesebro, City Attorney, S. B. Robinson, Chief Assistant City Attorney, and Kenneth K. Scott and Wendell Mackay, Deputies City Attorney, for Appellants.

H. Eugene Breitenbach and Henry L. Knoop for Respondent.

DORAN, J.—Defendants appeal from a judgment based upon a verdict of the jury in favor of plaintiff, respondent herein, in an action to recover damages for personal injuries sustained in a collision between two automobiles.

The record reveals that on December 5, 1936, an automobile driven by Avery Parrish, an employee of the Department of Water and Power of the City of Los Angeles, acting within the scope of his employment, collided with an automobile driven by one Sherwood E. Meredith, in which automobile plaintiff Howard C. Murphy was a guest.

At the trial defendants stipulated to liability, leaving as the sole issue to be determined by the jury the extent of the injuries sustained by the plaintiff. The jury returned a verdict in favor of plaintiff in the sum of $20,000. This appeal is from the judgment entered thereon after defendants' motion for a new trial was denied.

At the time of the accident plaintiff was 23 years of age; he had been working as a jig builder at the Lockheed Aircraft Corporation in Burbank, California. The immediate results of the accident were a fracture of the skull over the left eye, generalized contusion of the brain, laceration of the left frontal region and behind the right ear, bruises over the face and extremities, swelling and bruises on the left eye and the loss of the two upper center incisor teeth.

During the trial evidence was introduced which tended to show that prior to the accident plaintiff had possessed a good mind and retentive memory, good manners, a pleasing personality, was energetic and alert, walked with a military posture and gait, spoke fluently and enunciated clearly, and was able to carry on a lengthy conversation without the lapse of thought; that since the accident plaintiff is suffering from impairment of his mental faculties and loss of memory, the loss

of at least two-thirds of the sight of his left eye, his qualities and powers of speech have deteriorated, his gait is slovenly, social behavior uncouth, and that he has undergone a change of personality.

One of the grounds contained in defendants' motion for a new trial was as follows: "Irregularity in the proceedings in the trial by reason of misconduct on the part of plaintiff and his attorneys, and witnesses for the plaintiff, by which the defendants were prevented from having a fair trial in said action."

The charge of misconduct was based upon the allegations contained in affidavits filed by three investigators of the Department of Water and Power of the City of Los Angeles, in which it was alleged, in effect, that during the progress of the trial plaintiff was continually in the care of and accompanied by one Ben Loveless, a friend and a witness for the plaintiff, and that at the time of the court recesses and while the jury panel was passing from the court room and corridor, said Ben Loveless would bring plaintiff into the court room, and that when court convened again said Ben Loveless would take plaintiff by the arm and lead him into the corridor, in a manner indicating that plaintiff was childish or incompetent and that he required someone to care for him.

An affidavit was also filed by an employee of the Department of Water and Power, who took moving pictures of plaintiff for a period of six weeks, in which affidavit it was alleged that during this period of observation affiant observed that plaintiff walked in an alert, erect and purposeful manner. (These moving pictures, incidentally, were exhibited to the jurors at the trial.)

One Glynn B. Johnston, a representative of an audit company, also filed an affidavit, in substance supporting a portion of the foregoing.

A joint affidavit of plaintiff's attorneys filed in opposition to the motion for a new trial, alleged in part as follows: That affiant and his associate counsel had caused plaintiff to be examined by four doctors and surgeons who had specialized for many years in the field of neuropsychiatry and brain injury; that each of said physicians and surgeons had advised affiant that plaintiff suffered from a deterioration of mental functions which would be permanent or from which a recov-

ery was improbable; that plaintiff was never informed by anyone as to the conclusions of the doctors, and that at least two of the doctors had advised affiant that knowledge of their conclusions would be detrimental to the plaintiff and they requested that plaintiff be not allowed in the court room when they testified; that relying upon the advice of the doctors and believing that it would be to the best interest of the plaintiff to do so, affiant and his associate counsel determined to keep plaintiff out of the court room at all times when the trial of said cause was in progress, except at such times when his presence was actually required; that affiant requested Ben Loveless to remain with plaintiff during all times when he was kept out of the court room, and they requested him to do so in deference to plaintiff for the purpose of providing company for him during such time and to make certain that plaintiff would not return to the court room during the progress of the trial.

An affidavit of Ben Loveless, also filed in opposition to the motion for a new trial, in substance recited the reasons plaintiff was taken out of the court room, and denied any ulterior motive.

It should be noted in this connection that plaintiff denied that he was ever led around by Ben Loveless, or that he was unable to take care of himself. For example, plaintiff, when called as a witness by defendants under section 2055 of the Code of Civil Procedure, testified as follows: "Q. (By Mr. Scott, defendants' counsel) : I will ask you if it is true or not that Ben Loveless leads and guides you around the Casa del Norte Apartment where you live? MR. KNOOP (Plaintiff's counsel) : Well, there is no suggestion of anything like that in the testimony. There is no foundation for that question. THE COURT: I don't recall it. MR. SCOTT: No, there isn't any foundation for that, but there is another condition that has been very apparent around this court room since this trial opened. I don't have to put an impeaching question under Section 2055 to this witness. MR. KNOOP: No, you don't have to, but you did. Q. BY MR. SCOTT: Has Ben Loveless during the trial of this case, Mr. Murphy, been kind of leading you around—carrying you around like this (indicating)? A. No. Q. Does he lead you around when you are out at your apartment? A. No. Q. You are able to take care of yourself, are you not? A. I think so."

The witness Ben Loveless also testified, upon cross-examination, to the same effect as follows: "Q. (By Mr. Mackay, defendants' counsel) : Do you have to walk around the block with him (plaintiff) ?  A. No, sir.  Q. Do you have to hold him by the arm and lead him around any place?  A. No, sir."

The trial court, after giving consideration to the conflicting affidavits, as heretofore noted, denied defendants' motion for a new trial.

Appellants contend on appeal, as urged on their motion for a new trial, that: 1. "There was prejudicial error in the misconduct of plaintiff in the presence of the jury panel which was calculated to and did prejudice and influence the jury in its verdict and prevented defendants from having a fair and impartial trial"; 2. That errors in law occurred at the trial, which were excepted to by the defendants; and 3. That the damages were excessive and appeared to have been given under the influence of passion or prejudice.

With regard to appellants' contentions above mentioned, the trial court's judgment is expressed in the form of a memorandum opinion which, with relation to appellants' first contention, is as follows: "I watched from the first the solicitude with which Ben Loveless took the arm of plaintiff and escorted him out of the court room.  It appeared to me that the plaintiff shrank away each time Loveless took his arm, with a rather resentful attitude, and did not cooperate as he was apparently expected to do.  After the pictures were shown, however, Loveless had the good sense not to attempt the act any more, and I am satisfied that the reaction on the jury was rather the opposite of what defendant thinks, and did not result in prejudice either for or against plaintiff or defendant."  Whether the "reaction on the jury was rather the opposite of what defendant thinks" is beside the issue on appeal, although such belief properly could have been taken into account by the trial judge.  It is evident, however, that the record abundantly supports the trial judge's conclusion that no prejudice resulted from the incident complained of, hence to conclude to the contrary, on appeal, would be unwarranted.

■ Appellants' second contention which is based upon the court's failure to give certain instructions is not entirely without merit.  Nevertheless other instructions appear to

have sufficiently covered the general subject to the extent that the likelihood of prejudice resulting from the failure to give appellants' instructions is too remote to warrant a reversal of the judgment.

As to appellants' third contention regarding excessive damages, it is sufficient to note that the facts relied upon to support the judgment herein, when compared with facts in analogous decisions, appear to be sufficient to sustain the judgment. In that connection the following quotation is appropriate: " . . . it is to be remembered that the judge who presided over the trial and at first hand heard the testimony of medical witnesses respecting the man's injuries was given the opportunity to consider the question of excessiveness of the award on the motion for a new trial. It is significant that he chose not to disturb it and by his action in denying a new trial gave to it his approval. This fact, together with the facts developed by the evidence produced during the trial of the action, impels the conclusion that we are not warranted in disturbing the award." (*Hill* v. *County of Fresno,* 140 Cal. App. 272, 290 [35 Pac. (2d) 593, 602].) See, also, *Conner* v. *East Bay Municipal Utility Dist.,* 8 Cal. App. (2d) 613 [47 Pac. (2d) 774, 48 Pac. (2d) 982]; *Hoffman* v. *Southern Pac. Co.,* 215 Cal. 454 [11 Pac. (2d) 387]; *Riggs* v. *Gasser Motors,* 22 Cal. App. (2d) 636 [72 Pac. (2d) 172]; *Lahti* v. *McMenamin,* 204 Cal. 415 [268 Pac. 644]; *Machado* v. *Harm,* 112 Cal. App. 748 [297 Pac. 626]; *Bowman* v. *Motor Transit Co.,* 208 Cal. 652 [284 Pac. 443].

For the foregoing reasons the judgment appealed from is affirmed.

York, P. J., and White, J., concurred.